UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| **DAVID GORDON OPPENHEIMER,**<br>Plaintiff, | ' | CA No. _____ |
| v. | ' | |
| **ROWENA P. PATTON,** and<br>**PATTON PROPERTY GROUP, LLC**<br>d/b/a **ALLSTAR POWERHOUSE**<br>Defendants. | ' | <u>**JURY DEMANDED**</u> |

### ORIGINAL COMPLAINT FOR COPYRIGHT INFRINGEMENT AND VIOLATIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT

Plaintiff, David Gordon Oppenheimer ("Oppenheimer" or "Plaintiff"), for his complaint against Defendants, **Rowena P. Patton ("Patton") and Patton Property Group, LLC d/b/a Allstar Powerhouse ("Allstar") (collectively, "Defendants")**, alleges:

### JURISDICTION/VENUE

1. Oppenheimer's claims arise under the copyright laws of the United States, 17 U.S.C. 101 *et. seq.*, (hereinafter the Copyright Act.) and 17 U.S.C. 1202 et. seq., (hereinafter the Digital Millennium Copyright Act or "DMCA").

2. Subject matter and personal jurisdiction are vested in this Court pursuant to 28 U.S.C. 1338. Additionally, this Court has subject matter jurisdiction under 28 U.S.C. 1331 inasmuch as this claim arises under the copyright laws of the United States. Venue in this judicial district is proper pursuant to 28 U.S.C. 1400(a) and 28 U.S.C. 1391(b) and (c).

## THE PARTIES

3. Plaintiff is a citizen of North Carolina engaged in the business of professional photography and resides in and has a principal place of business in Asheville, Buncombe County, North Carolina.

4. Patton is an individual who works and resides in the State of North Carolina. Patton is the founder, president, director, manager, and/or another genre of principal of Allstar. Patton will receive actual notice of this filing by service upon her at 180 Riverview Dr., Asheville, North Carolina 28806, or 56 Central Ave, Suite 201, Asheville, North Carolina 28801, or wherever she may be found.

5. Allstar is a limited liability company organized under the laws of the State of North Carolina. Allstar will receive actual notice of this Complaint by service upon its registered agent, Rowena Patton, at its principal place of business, 56 Central Ave, Suite 201, Asheville, North Carolina 28801.

## INTRODUCTORY FACTS

6. Oppenheimer is a professional photographer, and is the author (photographer) of, and at all times relevant to this claim, has been and is now the sole owner and proprietor of all right, title and interest in and to the copyrights in the aerial photograph at issue in this matter (the "Work" **Exhibit 1**).

7. Oppenheimer makes his photographic works available for perusal and licensing online at his website http://www.performanceimpressions.com.

8. Oppenheimer has complied in all respects with Title 17, U.S.C. § 102, *et seq.*, and all other laws governing federal copyright applicable to the Work and registered the copyright with the Register of Copyrights at the U.S. Copyright Office. Attached hereto as **Exhibit 2** is a true and correct copy of the certificate of registration issued for this work,

entitled *"Aerial and Aviation Photographs Taken on Nov. 1, 2013,"* bearing certificate number VAu 1-156-844, and the photograph on deposit at the U.S. Copyright Office for said registration certificate.

9. At all relevant times hereto, Oppenheimer was and continues to be the sole owner of all rights, titles, and interests in and to the aforementioned registration and photographic Work. Oppenheimer's copyright in the above-described Work is presently valid and subsisting, was valid and subsisting from the moment of the Work's creation, and all conditions precedent to the filing of this suit have occurred.

10. For many years, it has been Oppenheimer's custom and business practice to display his copyright management information ("CMI") on his copyright registered photographs when they are first published by him, and thereafter. When published by Oppenheimer, the Work at issue in this case prominently displayed his CMI in the caption, with a facial watermark, and/or embedded in the metadata of the Work. Thus, Defendants were on notice that the Work was copyright protected.

11. Fewer than three (3) years before this filing, Oppenheimer discovered that one or more of the Defendants, and/or someone at their direction, infringed his copyrights by copying, distributing, and/or displaying (or directing others to do so) his protected Work in order to advertise and market their real estate business on the following Universal Resource Locators ("URLs"):

- https://www.facebook.com/UNCAAshevilleHomesForSaleAndRent/photos/a.10153742072558625/10153742072438625/?type=1&theater**; and**

- https://scontent-ort2-2.xx.fbcdn.net/v/t31.0-8/11036646_10153742072438625_3994781899111635048_o.jpg?_nc_cat=111&_nc_sid=dd9801&_nc_ohc=bL_42b3GYbAAX8srQiS&_nc_ht=scontent-ort2-2.xx&oh=9d0f1da532180d1121813c1db13bc75f&oe=5FAF6DFE

See **Exhibit 3 – The Infringed Work.**

12. Upon information and belief, one or more of the Defendants, and/or someone at their direction, located and accessed Oppenheimer's Works at https://www.performanceimpressions.com, then downloaded (or copied) the Work, removed Oppenheimer's CMI, and then publicly displayed the same on the Web.

13. On or about October 16, 2020, Oppenheimer's attorney sent a formal letter to the Defendant-Infringers identifying all of the known infringing URLs demanding Defendants cease and desist from their ongoing infringement and seeking information about the uses to which the works had been put, profits received, and the like (**Exhibit 4**).

14. After repeated demands for the Defendants to cease and desist in their infringements, and to resolve Oppenheimer's claims, it became clear that Defendants are contemptuous of Oppenheimer's copyrights, and suit has thus become necessary.

## CAUSES OF ACTION

### COUNT I – NON-WILLFUL COPYRIGHT INFRINGEMENT

15. Oppenheimer re-alleges and incorporates paragraphs 1 – 14 above as if recited *verbatim*.

16. Defendants have non-willfully infringed Oppenheimer's copyrights in and to the Work shown on **Exhibit 1** by scanning, copying, reproducing, distributing, displaying, publishing, and/or otherwise using, unauthorized copies of said photographs within the United States in violation of Title 17.

17. Upon information and belief, Defendants have benefitted from the infringement of the Work, while Oppenheimer has suffered and will continue to suffer damages, irreparable injury to his business, reputation, and goodwill; therefore,

Oppenheimer is entitled to injunctive relief, disgorgement of Defendants' profit, and other relief set forth in the Title.

### COUNT II – RECKLESS/WILLFUL COPYRIGHT INFRINGEMENT

18. Oppenheimer re-alleges and incorporates paragraphs 1 – 14 above as if recited *verbatim*.

19. Alternatively, Defendants have recklessly/willfully infringed Oppenheimer's copyrights in and to the Work shown on **Exhibit 1** by scanning, copying, reproducing, distributing, displaying, publishing, and/or otherwise using, unauthorized copies of said photograph within the United States in violation of Title 17.

20. As is his pattern and practice, Oppenheimer had clearly marked the Work with notices of copyright and additional CMI — including with a legible facial watermark, embedded metadata, and/or in and adjacent caption — including a "©" notice of copyright, stating that all rights are reserved, licensing instructions, Oppenheimer's address, phone number, email, and website URL. Oppenheimer does this to distinguish his Work from the works of others in his field, to provide a way for potential licensees to contact him for the purpose of purchasing licenses, as well as to ensure that anyone who merely views his Work appreciates that he owns all rights and title to it.

21. Upon information and belief, one or more of the Defendants, and/or a third party acting on their behalf, saw Oppenheimer's copyright notice prior to scraping it from the World Wide Web, then subsequently cropped out or otherwise removed Oppenheimer's CMI and causing it to be populated on its Facebook page.

22. Therefore, because they had the opportunity to appreciate that Oppenheimer was the sole author and owner of the Work, and still used it without license or authorization, the Defendants are deemed reckless/willful infringers of the Work.

23. Upon information and belief, one or more of the Defendants have benefitted from their infringements of the Work, while Oppenheimer has suffered and will continue to suffer damages; therefore, Oppenheimer is entitled to injunctive relief, damages (including disgorgement of Defendants' profits), and other relief set forth in the Act.

## COUNT III – VICARIOUS COPYRIGHT INFRINGEMENT

24. Oppenheimer re-alleges and incorporates paragraphs 1 – 14 above as if recited *verbatim*.

25. Pleading further but without wavier of the foregoing, Oppenheimer shows that at the time Allstar performed the infringing acts, Patton was the founder, director, manager, and/or another genre of principal of Allstar.

26. On information and belief, Patton controlled nearly all decisions of Allstar at the time of the infringement and was the dominant influences of the company. Patton provided hands-on decision making with respect to the activities of Allstar, making most of the decisions of the company. Patton had the right and ability to supervise and/or control this infringing conduct of Allstar, and/or stop the infringements once they began. Upon information and belief, Patton had an obvious and direct financial interest in these infringing activities of Allstar. Accordingly, they are personally liable to Oppenheimer as joint and/or contributory infringers or are otherwise vicariously liable for the actions of Allstar.

## COUNT IV – CONTRIBUTORY COPYRIGHT INFRINGEMENT

27. Oppenheimer re-alleges and incorporates paragraphs 1 – 14 above as if recited *verbatim*.

28. Alternatively, Patton intentionally induced, encouraged, caused, enabled, facilitated, and/or materially contributed to the infringements complained of herein by

directly and/or indirectly promoting the infringements, and/or has refused to exercise her right and/or ability to stop the infringement(s) after they began.

29. On information and belief, Patton is the dominant influences in Allstar. Patton provides hands-on decision making with respect to the activities of the entity, set and control the company's policies and protocols, and established corporate rules and cultures which encouraged the infringing activities. Patton therefore had the right and ability to supervise and/or control the infringing conduct of Allstar – and of its employees, agents, and/or servants – and/or to stop the infringements once they began, but either directly refused to exercise such rights or chose to remain willfully blind to the infringing activities while creating a work environment that encouraged and enabled the same. Additionally, and upon information and belief, Patton had obvious and direct financial interests in the infringing activities of Allstar, the company she runs.

30. Accordingly, Patton is personally liable to Oppenheimer as a contributory infringer for the infringing activities of Allstar.

**COUNT V - DIGITAL MILLENNIUM COPYRIGHT ACT VIOLATIONS**

31. Oppenheimer re-alleges and incorporates paragraphs 1 – 14 as if fully restated herein.

32. As is his pattern and practice, Oppenheimer had clearly marked the Work with notices of copyright and additional CMI — including with a legible facial watermark, in an adjacent caption, and/or embedded in the Work's metadata — including a "©" notice of copyright, stating that all rights are reserved, licensing instructions, Oppenheimer's address, phone number, email, and website URL. Oppenheimer does this to distinguish his Work from the works of others in his field, to provide a way for potential licensees to

contact him for the purpose of purchasing licenses, as well as to ensure that anyone who merely views his Work appreciates that he owns all rights and title to it.

33. Upon information and belief, one or more of the Defendants, or someone acting at their direction or on their behalf, intentionally removed, cropped-off, and/or obscured beyond legibility, the facial CMI as well as the CMI in the metadata of the Work posted online, in violation of 17 U.S.C. § 1202(b).

34. Upon information and belief, one or more of the Defendants, or someone acting at their direction or on their behalf, distributed copies and/or derivatives of the Work knowing that such facial and metadata CMI had been cropped-off or had been otherwise removed or obscured beyond legibility all without authorization in violation of both 17 U.S.C. §1202(a)(2) and (b)(3).

35. Upon information and belief, Defendants knew or had reasonable grounds to know that cropping-off or otherwise removing or obscuring beyond legibility Oppenheimer's CMI from the Work would induce, enable, facilitate, and/or conceal infringements of Oppenheimer's copyright in violation of both 17 U.S.C. §1202(a) and (b).

36. Oppenheimer therefore is entitled to statutory damages/penalties from Defendants of not less than $2,500, and not more than $25,000 for each act committed in violation of 17 U.S.C. §1202(a)(1), 17 U.S.C. §1202(a)(2), 17 U.S.C. §1202(b)(1), and/or 17 U.S.C. §1202(b)(2).

37. Oppenheimer is also entitled to his Lodestar costs, including reasonable attorney's fees, pursuant to 17 U.S.C. §1203(b)(5).

## **RELIEF REQUESTED**

**WHEREFORE**, Oppenheimer respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

A. That Defendants, their agents, employees and/or servants be preliminarily and permanently enjoined from infringing Oppenheimer's copyright in any manner whatsoever and from publishing through any visual media, and from selling, marketing or otherwise distributing any of his images, and from using his images in sales, marketing, and/or advertising;

B. That Defendants provide an accounting of all gains, profits and advantages derived by them because of the willful and unlawful acts of copyright infringement above described;

C. That Defendants be ordered to pay over to Oppenheimer his actual damages sustained, in addition to all their profits attributable to the infringements, and which are not considered in computing Oppenheimer's actual damages incurred as a result of Defendant's copyright infringements described herein, pursuant to 17 U.S.C. §504(b);

D. In the alternative, and at Oppenheimer's election after verdict, that Defendants be ordered to pay maximum statutory damages in the amount $150,000 *for each* Work infringed pursuant to 17 U.S.C. §504(c), or such other amount as the jury may deem appropriate;

E. That in addition to the above, Defendants be ordered to pay over to Oppenheimer actual damages for each DMCA violation, plus all of Defendants' profits that are attributable to each such violation – which are not considered in computing Oppenheimer's actual damages – pursuant to 17 U.S.C. §1203(c)(2);

F. That alternative to actual damages under the DMCA, and at Oppenheimer's election after verdict, Defendants be: 1) ordered to pay to Oppenheimer the maximum statutory damages provided by 17 U.S.C. §1202 (a) (1) and (2), and by 17 U.S.C.

§1203(c)(3)(B) for each violation; and 2) permanently enjoined and prohibited from employing, altering, cropping, obscuring, mutilating or otherwise utilizing Oppenheimer's copyrighted images or their copyright management information in any manner or media whatsoever, pursuant to 17 U.S.C. § 1203(b)(1);

G. That Defendants be ordered to pay to Oppenheimer all his Lodestar costs including reasonable attorney's fees pursuant to 17 U.S.C. § 504(c) and §505 and 17 U.S.C. §1203(b)(5); *and*

H. For such other and further relief as this court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES.**

**LEJUNE LAW FIRM**

By: */s Dana A. LeJune*
Dana A. LeJune
Texas Bar: 12188250
NC Bar: 49025
1225 North Loop West
Suite 825
Houston, Texas 77007
713.942.9898 Phone
713.942.9899 Facsimile
dlejune@triallawyers.net

**NORTH CAROLINA OFFICE:**
7 Orchard Street
Suite 200
Asheville, NC 28801
828-774-5800 Office

Attorneys for Plaintiff